CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
1/24/2025
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| **LISA KATHRYN SANDS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   **6:25CV00011** |
| ) | |
| **ABBOTT LABORATORIES INC., d/b/a** ) | |
| **"ABBOTT NUTRITION SUPPLY CHAIN,"**) | |
| ) | **JURY TRIAL DEMANDED** |
| **Serve:** ) | |
| **CT Corporation System** ) | |
| **4701 Cox Road, Suite 285,** ) | |
| **Glen Allen, Virginia 23060** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Lisa Kathryn Sands ("Plaintiff" or "Ms. Sands"), by counsel, and hereby presents this Complaint against Defendant Abbott Laboratories Inc., d/b/a "Abbott Nutrition Supply Chain" ("Defendant" or "Abbott Labs"). In support thereof, Ms. Sands provides the following:

### I.   JURISDICTION

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Family and Medical Leave Act, as codified under Title 29 U.S.C. §§ 2601, *et seq*. ("FMLA"). *See generally* 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Ms. Sands' state court claims pursuant to 28 U.S. Code § 1367.

2. Ms. Sands is a citizen of the United States and is domiciled in Bedford County, Virginia.

1

3. Abbott Labs is headquartered in Chicago, Illinois and conducts business throughout the Commonwealth of Virginia. Abbott owns numerous brands and manufactures a diverse array of products including medical devices, diagnostic tools, and nutritional formulas such as those sold under the Similac, Ensure, and Pedialyte brands.

4. This matter arises out of an employment relationship between the parties. Abbott Labs employed Ms. Sands at its Campbell County, Virginia facility.

## II. FACTS

5. Ms. Sands was hired by Abbott Labs as the Materials Manager on or about November 9, 2015. Ms. Sands worked full-time for Abbott Labs until her wrongful termination on or about August 15, 2024.

6. During the course of her employment, Ms. Sands met all legitimate business expectations of Abbott Labs.

7. Ms. Sands easily met and accomplished all essential functions of her job.

8. In April of 2024, Ms. Sands submitted FMLA paperwork for two weeks of continuous leave due to her father's serious health condition. Ms. Sands' father developed a dangerous infection in his spine and surrounding his heart requiring a hospital stay of approximately one week, with in-home treatment and care required thereafter.

9. At the time that Ms. Sands applied for FMLA leave, she met all eligibility criteria insofar as she had worked more than 1,250 hours in the preceding twelve months, had worked on a continuous basis with Abbott Labs for significantly longer than that, and Abbott Labs employed at least fifty (50) employees within seventy-five (75) miles of Ms. Sands' worksite.

10. Despite the fact that Abbott Labs and Ms. Sands' supervisor knew that Ms. Sands was on approved FMLA leave in April of 2024, Abbott Labs required Ms. Sands to work during her leave.

11. During her FMLA leave, Ms. Sands was forced to answer questions from her supervisor, perform job duties, and work her shift as if she were not on FMLA leave. Ms. Sands' supervisor fostered the expectation that Ms. Sands was required to work while on FMLA leave, or she would be punished.

12. Ms. Sands cooperated with Abbott Labs' directives and worked each day during her two-week period of FMLA leave. However, she did report that she was improperly required to work during this time period.

13. Abbott Labs uses a third-party administrator to assist employees with the logistics and implementation of FMLA leave. Abbot Labs initially used administration company Matrix but switched to administration company Sedgwick on or about July 1, 2024.

14. At the conclusion of her two-week period of FMLA leave, the relevant third-party administrator learned that Ms. Sands had been required to work during her leave period. Ms. Sands requested that she be paid for her work during this time. The administrator became alarmed and informed Ms. Sands that she should be paid for the work she performed.

15. After the FMLA "leave" had already been "used" by Ms. Sands, Ms. Sands was told that the administrator was "cancelling" the FMLA leave due to the fact that Abbott Labs had unlawfully required Ms. Sands to work while on FMLA leave. After the FMLA leave was "cancelled," Abbott Labs paid Ms. Sands for her hours spent working during her period of FMLA "leave".

16. Abbott Labs opened an investigation into the fact that Ms. Sands had been required to work during FMLA "leave." Despite the fact that it was Ms. Sands' federal rights that have been violated, Ms. Sands was repeatedly questioned about working during her leave period by Abbott Labs Human Resources representatives in the early summer of 2024 as if she had done something wrong in complying with her management's directives.

17. Ms. Sands consistently cooperated with the investigation and communicated professionally regarding the incident, her supervisor's demands, and the two-week period in general, explaining that she had been pressured and directed to work.

18. On July 18, 2024, Abbott Labs suspended Ms. Sands from employment. A Human Resources representative informed Ms. Sands that she had demonstrated leadership issues of late.

19. Ms. Sands asked for specific examples because she had not received workplace discipline. The Human Resources representative refused to provide any examples of alleged poor work performance or "leadership issues".

20. Ms. Sands emailed the Human Resources representative that same day asking for information related to her work performance:

> **From:** Lisa Sands <lsands57@yahoo.com>
> **Date:** July 18, 2024 at 10:16:24 PM EDT
> **To:** "Boskovic, Deborah K" <Deborah.Boskovic@abbott.com>
> **Cc:** Lisa Sands <lsands57@yahoo.com>
> **Subject: Re: ER Follow up**
>
> Hello Deborah. Understandably, I was taken aback during our conversation earlier. To ensure I accurately understand the concerns, could you please detail them for me in an email with specific examples for each? Thank you

4

21. The Human Resources representative did not initially respond. Thus, Ms. Sands sent a follow-up email repeating her question regarding her own work performance.

22. The representative responded to Ms. Sands' second email:

> Hi Lisa, Thank you for reaching out. The concerns raised were specific to your overall leadership behaviors, communications (verbal and written) and integrity. I appreciate your eagerness to return to the office. Please be assured, I am working diligently to bring the matter to a prompt resolution. Thank you for your patience.

23. Because, even in the response, the Human Resources representative had not cited any specific examples, Ms. Sands replied:

> **From:** Lisa Sands <lsands57@yahoo.com>
> **Sent:** Monday, July 22, 2024 3:39 PM
> **To:** Boskovic, Deborah K <Deborah.Boskovic@abbott.com>
> **Cc:** Lisa Sands <lsands57@yahoo.com>
> **Subject:** Re: ER Follow up
>
> Thank you Deborah. Could you please also provide specific examples of each?  Thank you

24. Ms. Sands' supervisor directed employees with concerns regarding the practices of Abbott Labs to report those concerns to Human Resources.

25. Ms. Sands reported in good faith to the Human Resources representative that she was being retaliated against for taking FMLA leave, being directed to work while on FMLA leave, fully participating in an investigation regarding the same and, ultimately, requesting that she be paid for her work time, in compliance with the law.  Ms. Sands is not an attorney, but she considered the activities that she communicated and reported to be violations of the law.

26. On July 16, 2024, Ms. Sands sent the following email to Abbott Labs Human Resources:

5

> Thank you for your concern. I feel I was treated unfairly because I have done what I was asked to do. I was expected to work on leave and then I reported this. Is this something I need to talk to my lawyer about? Thanks for your time on this.

27. On August 14, 2024, Abbott Labs informed Ms. Sands that her complaints regarding the treatment she received during and after her FMLA leave were unfounded.

28. On August 15, 2024, Abbott Labs terminated Ms. Sands' employment. The letter was signed by her supervisor, Anne Gowen. As provided in the letter:

> Dear Ms. Sands:
>
> This letter is being sent to you to communicate the decision to end your employment with Abbott. As you know, concerns regarding your workplace conduct were investigated and your continued employment has been under review. It has been determined that your actions of retrospectively obtaining a monetary incentive from Abbott without prior approval and alignment from your manager nor consistent with the communications and behaviors you exhibited while on leave, coupled with your subsequent unprofessional communications demonstrated a significant level of disregard for the core values expected of an Abbott employee, not to mention a member of leadership and violated Abbott's Code of Business Conduct: Principle 1, Our Code in Action: Honesty, Fairness and Integrity."

(emphasis added).

29. This letter is clearly a reference to Ms. Sands' reports of being required to work while on federally protected and previously approved leave, her participation in the investigation regarding the same, and the requisite payments for her work completed during this leave. This communication, from a supervisor, is direct evidence of violations of the FMLA.

30. Indeed, Abbott Labs engaged in unlawful and discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Sands, all in violation of the FMLA.

6

31. At the time of her termination from employment, Ms. Sands was protected from retaliation and interference for engaging in a protected activity (i.e., using FMLA leave for her father's serious health condition).

32. As a direct and proximate result of Abbott Labs' actions, Ms. Sands has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Abbott Labs engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Sands so as to support an award of liquidated damages.

### COUNT I: CLAIM FOR DISCRIMINATION AND RETALIATION IN VIOLATION OF THE FMLA

33. Ms. Sands incorporates by reference the preceding paragraphs of this Complaint.

34. Abbott Labs is (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

35. Ms. Sands worked for Abbott Labs for well over one (1) year and worked more than 1,250 hours during the twelve (12) month period immediately preceding her request for FMLA leave.

36. Ms. Sands properly notified Abbott Labs of her father's serious health condition, and of her need for FMLA-qualifying leave, to which she was entitled.

37. Abbott Labs discriminated against Ms. Sands by improperly denying her federally protected FMLA rights and forcing her to work during her FMLA leave period.

38. Abbott Labs retaliated against Ms. Sands for attempting to exercise the substantive FMLA rights to which she was entitled.

39. Abbott Labs would not have terminated Ms. Sands' employment but for her requests related to, and use of, protected FMLA leave.

40. Any reasons given by Abbott Labs for its decision to terminate Ms. Sands' employment were pretextual as her work performance was excellent.

41. Abbott Labs' discriminatory and retaliatory conduct prejudiced Ms. Sands in that she lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Abbott Labs' violation.

42. The above-described acts by Abbott Labs and employees of Abbott Labs constitute unlawful discrimination and/or retaliation in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601, *et seq.* ("FMLA").

## **COUNT II: CLAIM FOR INTERFERENCE WITH FMLA RIGHTS**

43. Ms. Sands incorporates by reference the preceding paragraphs of this Complaint.

44. Abbott Labs is (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

45. Ms. Sands worked for Abbott Labs for well over one (1) year and worked more than 1,250 hours during the twelve (12) month period immediately preceding her request for FMLA leave.

8

46. Ms. Sands properly notified Abbott Labs of her father's serious health condition, and of her need for FMLA-qualifying leave, to which she was entitled, when she requested protected FMLA leave.

47. Abbott Labs interfered with Ms. Sands' use of FMLA leave by forcing her to work during her leave period, robbing her of the federally protected leave.

48. Abbott Labs' interference prejudiced Ms. Sands in that she lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Abbott Labs' violation.

49. The above-described acts by Abbott Labs and employees of Abbott Labs constitute unlawful interference with Ms. Sands's rights in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601, *et seq.* ("FMLA").

## COUNT III: TERMINATION OF EMPLOYMENT IN VIOLATION OF VA. CODE § 40.1-27.3

50. Ms. Sands incorporates by reference the preceding paragraphs of this Complaint.

51. At all times, Ms. Sands was an employee of Abbott Labs.

52. In July of 2024, Ms. Sands reported to Abbott Labs that Abbott Labs had engaged in unlawful activity as described above.

53. Ms. Sands immediately reported this unlawful activity in good faith.

54. Va. Code § 40.1-27.3 states that "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: . . .[r]eports a violation of any federal

or state law or regulation to a supervisor or to any governmental body or law-enforcement official."

55. Abbott Labs terminated Ms. Sands in retaliation for her report. Ms. Sands' report regarded the unlawfulness of her treatment while on FMLA leave and thereafter, constituting good faith reporting of FMLA federal law violations in addition to violations of:

    a. The Virginia Minimum Wage Act, Va. Code § 40.1-29.8, *et seq.*

    b. Va. Code § 40.1-33.6:

> No employer shall discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee (i) has requested or exercised the benefits provided for in this article or (ii) has alleged a violation of this article.

    c. Va. Code § 40.1-28.7:9:

> No employer shall discharge from employment or take other retaliatory action against an employee because the employee (i) inquired about or discussed with, or disclosed to, another employee any information about either the employee's own wages or other compensation or about any other employee's wages or other compensation . . .

56. Ms. Sands was adequately performing her job at the time of the termination of her employment and any other reason offered by Defendant for her termination is pretextual.

57. The termination of Ms. Sands' employment violated Va. Code § 40.1-27.3.

58. As a direct result and proximate result of the termination of employment, Ms. Sands has suffered and will continue to suffer pecuniary loss.

59. Pursuant to Virginia Code § 40.1-27.3, Ms. Sands is entitled to "(i) an injunction to restrain continued violation of this section, (ii) the reinstatement of [her

employment], and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

WHEREFORE, Plaintiff Lisa Kathryn Sands demands judgment against Defendant Abbott Laboratories Inc., d/b/a "Abbott Nutrition Supply Chain" for equitable relief, injunctive relief, reinstatement of Ms. Sands to the same position she held before the retaliatory and discriminatory termination or to an equivalent position; compensation for lost wages, benefits, and other remuneration, full reinstatement of fringe benefits and seniority rights, liquidated damages, front-pay and benefits, all together with interest thereon, as well as reasonable attorneys' fees and costs; and for such other and further relief as justice may require.

Trial by jury is demanded on all issues that can be submitted to a jury including whether the parties are subject to a binding arbitration agreement.

Respectfully submitted,

**LISA KATHRYN SANDS**

*/s/ Thomas E. Strelka*
Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, Virginia 24018
(540) 283-0802
thomas@vaemployment.law
leigh@vaemployment.law

*Counsel for Plaintiff*